Mrs. Emma HOGUE et al., Appellants,

v.

Julia Lee GLOVER et al., Appellees.

No. 3460.

Court of Civil Appeals of Texas.

Waco.

May 16, 1957.

Rehearing Denied June 6, 1957.

Pat S. Russell, Frank H. Cathey, Jr., for appellant Emma Hogue.

H. P. Kucera, City Atty., Charles C. Wells, Arthur G. Schroeder, Jr., Asst. City Attys., Dallas, for City of Dallas.

Burt Barr, J. Lee Zumwalt, Dallas, for appellees.

HALE, Justice.

Appellees, Julia Lee Glover and others, hereafter referred to as plaintiffs, brought this action in the court below to enjoin appellant, Mrs. Emma Hogue, hereafter referred to as defendant, from constructing a building on a part of Block B of the Beckley Club Addition to the City of Dallas. Before trial, the City of Dallas, hereafter referred to as intervenor, came into the case with an action in trespass to try title, asserting ownership and right of control of the property in controversy by reason of the prior dedication of the property to the public by the owner thereof.

The record discloses that on June 24, 1925, one S. A. Temple, developer of the Beckley Club Addition, filed a plat of record, showing the Addition subdivided in lots and blocks, with the exception of Block B, the property in dispute, which is shown on the plat as being a lake and stream with the designation "Lake Helen" thereon. The major portion of this block was covered by Cedar Creek, a wide stream with rock banks. "Lake Helen" was formed by the erection of a concrete dam across the creek. Relying upon the record plat and the representations of Temple, the plaintiffs purchased lots in the Addition. After a number of lots had been sold, Temple attempted to convey Block B, designated as "Lake Helen", to a corporation known as Beckley Boating and Fishing Club, Inc. Sometime during the 1930's, the concrete dam supporting the waters of the lake gave way, allowing the impounded water to escape, and allowing Cedar Creek to return to its normal channel and flow.

The right of Beckley Boating and Fishing Club, Inc. to do business under its charter was revoked by the Secretary of the State of Texas on September 23, 1941, and on March 7, 1950, the charter of the corporation was forfeited. Thereafter, in 1952, a group of persons purporting to represent the defunct corporation attempted to convey Block B to one Clyde Fagg, a resident of the Addition. Fagg in turn attempted to convey the north half of Block B to the defendant, Mrs. Emma Hogue, who now asserts the right to build a house thereon.

In its plea of intervention, the City of Dallas alleged that the property was not suited to or susceptible of residential construction, nor could it be used as residential property under the Zoning Ordinance of the City of Dallas, and further, in the alternative, that Cedar Creek, which traverses the length of the block and forms a major portion of the block, was a stream navigable in law, the bed of which was owned by the intervenor by virtue of Art. 7467a of Vernon's Tex.Civ.Stats.

The case was tried before the court without a jury and judgment was originally rendered restraining the defendant from building a residence on Block B, and awarding to intervenor the bed of the stream in the block. On motion for rehearing in the trial court, the judgment was modified to the extent that all relief sought by the intervenor was denied, but that part of the original judgment which enjoined building in the block by defendant was not changed. Intervenor agrees in its brief herein that the judgment which was finally rendered was correct in so far as it goes, but it asserts that the relief which it requested should also have been granted, and that the judgment as it now stands on the appeal should be reformed so as

to include such relief, and as so reformed, that it should be affirmed. Defendant, Mrs. Hogue, says the judgment should be reversed because, among other reasons, the court erred in rendering judgment enjoining her from building a structure on the part of Block B which she had acquired from Clyde Fagg.

■ In his findings of fact and conclusions of law, the trial court expressly concluded, and we think properly so, that "The actions of said S. A. Temple in filing the map of said Beckley Club Addition and the sale of lots with reference thereto, and his representations made to the Plaintiffs, or their predecessors in title, created a covenant running with the land which subjects the said Block B of Beckley Club Addition to use only for the purposes of recreation and pleasure in favor of and for the benefit of the owners of the lots located in the said Beckley Club Addition. No use may be made of Block B in Beckley Club Addition inconsistent with the above described covenant, and in particular no residence or other structures of any kind may be constructed thereon."

We do not think the trial court erred in permanently enjoining the defendant, Mrs. Hogue, from constructing a building for residential purposes upon that part of Block B in the Beckley Club Addition which she claims she acquired from Clyde Fagg, for many reasons, some of which will be noted briefly.

■ In the first place, it appears to us that the purported deeds of conveyance from Beckley Boating and Fishing Club, Inc. in 1952 to Clyde Fagg, and from the latter to defendant, were both void, invalid and of no legal force or effect, in so far as they relate to this controversy. There was no evidence that the persons who attempted to act for the corporation in the execution and delivery of the purported deed, were officers or directors thereof, or that they had any authority to act in behalf of the defunct corporation. Furthermore, since the Beckley Boating

and Fishing Club, Inc. had never been a going concern during the 27 years of its existence, if its long continuing non-existence in fact could be regarded an existence de jure, then it held the legal title to Block B in the Beckley Club Addition at all times in trust for the beneficial use of the owners of the lots in the Addition, subject to the covenant of the developer that Block B in the Addition should be used "only for the purposes of recreation and pleasure in favor of and for the benefit of the owners of the lots located in said Beckley Club Addition." Consequently, the Beckley Boating and Fishing Club, Inc., and persons purporting to act for it in the execution of the proposed deed to Clyde Fagg in 1952, were without any authority in law or equity to convey an unconditional title in fee simple to Fagg, or to any other person, that would destroy or render of no force and effect the covenant which was placed upon the Addition by the developer thereof, in so far as the use of Block B in the Addition was concerned.

■ Moreover, the testimony was undisputed that some of the plaintiffs were induced to buy their lots in the Addition and build homes upon the same, on the oral promise of the developer and his statements through published advertisements, that each purchaser of a lot in the Addition would receive one share of stock in the Beckley Boating and Fishing Club, Inc. Therefore, when the corporation was created, each owner of a lot in the Addition thereupon became the equitable and beneficial owner of one share of stock in the corporation, and hence the beneficial owner of his proportionate part of the net assets of the corporation, in the event of its dissolution. However, none of the plaintiffs ever at any time received notice of any stockholders' meeting by the corporation and, upon inquiry as to when they would receive their stock, they were assured it would be forthcoming; but it was never issued. Not only so, but the deed from Fagg to defendant contained the following recital: "This conveyance is

given and accepted subject to the restrictive covenants and/or the easements imposed upon the property herein conveyed as the same appears of record in the office of the County Clerk of Dallas County, Texas." In addition to the designation of Block B as "Lake Helen" there were other smaller lakes shown on the map upstream from Cedar Creek, and by the covenants contained in the dedication the erection of a residence on Block B was prohibited.

In further support of the trial court's judgment enjoining defendant from constructing a building for residential purposes upon that part of Block B which she claims she acquired from Clyde Fagg, we may note the contention of intervenor that such property is not suited to or susceptible of residential purposes under the Zoning Ordinance of the City of Dallas. This contention is well founded, even though it may be prematurely urged as a ground of relief on the part of intervenor. It was stipulated by the parties that Block B was zoned for residential use in the category known as Residential,—7,500 Square Feet. The ordinance requires a lot to be at least 100 feet in depth and further requires that any main structure shall face a public street. In addition, a front yard shall be provided which must not be less than 30 feet, and the rear yard must have a depth of not less than 20 feet. Intervenor's City Engineer testified without dispute that the greatest distance at right angles between the bank and the stream and the south property line of North Shore Drive would be 74 feet, which would be insufficient depth for a residential lot, in that zone.

The testimony further shows that if a house were built as proposed to be done by defendant, the structure would extend into the channel of Cedar Creek, which is a natural stream. The evidence also shows that in flood periods this stream comes within a few feet of North Shore Drive, which would mean that a house constructed at the place designated by appellant would be about ten feet deep in water. Obviously, such a structure would obstruct the natural flow not only in flood times but in periods of ordinary rainfall. It is undoubtedly the duty of the intervenor, we think, to see that such an obstruction should not be allowed to be built where such consequences are possible. Petty v. City of San Antonio, Tex.Civ.App., 181 S.W. 224 (er. ref.); City of Galveston v. Mann, 135 Tex. 319, 143 S.W.2d 1028.

We cannot agree with the contention of the intervenor to the effect that the developer of Beckley Club Addition dedicated Block B in such Addition to the public, generally. On the contrary, it appears to us from the evidence and the facts found by the trial court, that the so-called dedication was in fact and in law a covenant running with the land sold by the developer to future home owners in the Addition, for the use and benefit of such home owners as distinguished from the general public. We think the case of Evans v. Southside Place Park Ass'n, Tex. Civ.App., 154 S.W.2d 914 (er. ref.) is conclusive against intervenor on the point under consideration. See also City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d 1034. Since the so-called dedication of Block B constituted a covenant running with the land in the remainder of Beckley Club Addition for the use and benefit of the property owners in such Addition, and was not intended to inure to the benefit of the public, generally, neither the intervenor, nor the State of Texas, nor any of its political subdivisions, acquired any right, title or interest in or to Block B by reason of the covenant of the developer that Block B should be used only for purposes of recreation and pleasure by the owners of the lots located in such Addition.

Art. 7467a of Vernon's Tex.Civ.Stats., enacted by the 39th Leg. in 1925, reads as follows:

"The State of Texas hereby relinquishes, quit claims and grants unto all incorporated cities and towns that have a population of forty thousand

inhabitants, or more, according to the 1920 census, [which the City of Dallas had] all of the beds and channels, and also all of the abandoned beds and channels of all rivers, streams and other channels that are now or that may hereafter be within the present or future corporate limits of such cities or towns, in so far as the beds and channels, and such abandoned channels, of such rivers, streams and other channels may be owned or claimed as the property of said State."

■ However, from the record before us, we cannot say as a matter of law that the State of Texas owned or claimed any part of Block B in Beckley Club Addition, or of any bed or channel of Cedar Creek, as it flowed through the Addition at and prior to the time when the Addition was subdivided, platted and recorded. We find no pleading or proof showing the width of Cedar Creek as it flowed through the entire tract represented by the original patent from the State, or as to the entire quantity of land which the intervenor now claims out of the original patent. In order to be a navigable stream, it was and is necessary, within the purview of Arts. 5302 and 7467a of Vernon's Tex.Civ.Stats., that Cedar Creek have an average width of thirty feet from the mouth up. The only evidence as to the depth or width of Cedar Creek at the present time is restricted to that part of the same which flows through Block B of the Addition for a distance of approximately one thousand feet. As a matter of fact, the intervenor never asserted any right, title or interest in or to Block B, or to the bed or channel of Cedar Creek at any time prior to the institution of this suit, but by the collection of taxes from the owners of record, suits against them for the same, and the securing of easements for the use thereof, it has thereby recognized title to such property to be in the record owners of the same.

The original patent from the State covering the subject properly is specific and not general in its terms and description of the property conveyed, its field notes being as follows:

"Beginning at the NW corner of John McDowell's Survey No. 726 at a stake in prairie;

"Thence North at 520 varas to South prong of Cedar Creek, 6 varas wide, course East, at 600 varas same, 8 varas wide, course East, in all 950.4 varas to a stake on the North bank of a drain and corner of G. L. Leonard Survey, from which a Cedar bears S 63 deg E 11 varas, another 12 in dia bears S 39 E 10 varas;

"Thence East at 325 varas said Creek, course North, in all 1900.8 varas to a stake on the South side of a White Rock hill, from which a Spanish Oak 10 in dia bears S 33 deg E 46 varas;

"Thence South 950.4 varas to a stake, the NE corner of said John McDowell's survey;

"Thence with the North line of said survey West 1900.8 varas to the beginning. Bearings marked "X". Hereby relinquishing to him, the said Thomas McDowell and his heirs or assigns forever, all the right and title in and to said land heretofore held and possessed by the said State, and I do hereby issue this Letter Patent for the same."

■ It is thus clear that the existence of Cedar Creek was known to the State and its officers and agents at the time when the foregoing patent was granted. This patent convincingly shows that Cedar Creek was only six varas wide at one point and eight varas wide at another point. These width descriptions undoubtedly determine the fact that the creek was not thirty feet in width at the time of the issuance of this patent in 1856. Notwithstanding the field notes call for Cedar Creek at two points in the survey, it will be noted that the patent recites that the

State thereby conveys to the patentee "all right and title in and to said land theretofore held and possessed by the said State."

In the case of State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1078, a landmark opinion by the Supreme Court, it was said: "The decisions of this state announce the rule that the state can grant soil beneath navigable public waters." If Cedar Creek could be regarded as a navigable stream at the time when the patent was originally issued, granting the subject property, then it is obvious to us that the State and its proper officers intended to grant and did grant the soil beneath Cedar Creek when they executed and delivered the patent to the predecessors in title of the devoloper of the Beckley Club Addition, granting and quit claiming all the underlying beds and channels of Cedar Creek, and relinquished "all right and title in and to said land heretofore held and possessed by the said State."

Finding no reversible error in the judgment, all points of error of all appealing parties are overruled and the judgment of the court below is in all things affirmed.