**Ernest I. FUDGE et al., Appellants,**

v.

**William R. HOGGE et al., Appellees.**

**No. 15458.**

Court of Civil Appeals of Texas.

Dallas.

April 3, 1959.

Woodgate & Richards, Dallas, for appellants.

Akin & Vial, Earl Luna, Saner, Jack, Sallinger & Nichols, Chancellor & Wood and Strasburger, Price, Kelton, Miller & Martin, Odeneal & Odeneal, Dallas, and Wyatt W. Lipscomb, City Atty., Garland, for appellees.

DIXON, Chief Justice.

Appellant Ernest I. Fudge, and his wife, and ten other parties are owners of property in Westchester Estates Nos. 1 and 3, additions to the City of Garland, Texas. As plaintiffs in the trial court, they brought this suit May 17, 1957, for damages, actual

and exemplary, for alleged fraud and breach of contract affecting rights claimed by them as owners of lots contiguous to a former lakesite in Westchester Estates No. 3. In the alternative they pled for title and possession by reliction of respective portions of the former lakesite lying contiguous to their lots.

Appellees, defendants in the trial court, were William R. Hogge and seven other parties including the City of Garland.

Appellants claim that though the property was dedicated to the public use in 1950 as a lakesite, as shown by plats, appellees or their predecessors in title in the year 1950 filled in the site with dirt, converted the land to their own use, and built improvements thereon. The City of Garland now has a fire station on the former lakesite.

The plat of Westchester Estates No. 1 together with deed restrictions signed by E. M. Bennett, President of Westchester Estates Corporation, was filed for record February 21, 1949. The plat of Westchester Estates No. 3, signed by William R. Hogge, owner, was signed July 28, 1950, and filed for record September 27, 1950. The deed restrictions covering the latter addition were signed by Hogge August 24, 1950, and filed for record September 27, 1950.

The plat of Westchester Estates No. 3 shows an undivided area, irregular in outline, which is the lakesite, though it is not so labeled. The dedicatory words accompanying this plat are as follows: "Now, Therefore, Know All Men By These Presents: That I, William R. Hogge, do hereby adopt this plat, designating the hereinabove described property, as the Third Installment of Westchester Estates, an addition to the City of Garland, Texas, and do hereby dedicate to the public use forever the streets, alleys and easements shown thereon."

The deed restrictions covering Westchester Estates No. 3 provide, among other things, that the property shall be used only for single family dwelling purposes. They state also that the restrictions shall be covenants running with the land, and shall be binding on all parties until January 1, 1979.

Paragraph 12 of the restrictions covering Westchester Estates No. 3 has to do with the lakesite in dispute, so we copy said paragraph in full: "(12) All owners of lots contiguous to and in contact with the lake shall be organized into a special neighborhood association, each owner of a lot of the original plat as filed to have one vote. This association shall elect three persons to serve without pay to represent them, who shall have authority for one year after their elections or until their successors are elected, to adopt rules and regulations for the use and maintenance of the lake. They shall have authority to collect a maintenance fee from each lot owner not to exceed $25.00 per lot per year for the purpose of policing, obtaining insurance against liability to the property owners and maintaining the safety, beauty and value of the lake. This maintenance tax shall be and constitute a lien on each lot, the lien securing such maintenance tax, however, to always be subordinate and inferior to valid taxes assessed by taxing authorities on the property and also subordinate and inferior to any mortgage or bona fide lien securing any loan predicated on a purchase money or construction lien on any lot. In case of emergency the association may, by mutual consent, vote to increase the tax above the maximum as herein set forth for any particular year. All owners of lots will be bound by the rules and regulations adopted for the use of the lake and shall submit plans to committee for any changes in the landscape improvements before commencing with same. In case of any dispute over the rules of the committee, the lot owner or owners objecting may appeal to the association as a whole, where a majority of votes shall decide the issues involved." Similar deed

restrictions covered property in Westchester Estates No. 1.

Appellees filed motions for summary judgment. These motions were sustained and judgment was rendered in favor of appellees that appellants take nothing. The judgment also provides that defendant Jack Tynes who had filed a disclaimer, be dismissed from the suit; and that the cross-action of defendant Marjorie Winter, who had sued certain cross-defendants, be dismissed.

Appellees have filed five separate briefs. In a number of instances they have set up the same defenses and have cited the same authorities. We shall therefore discuss their defenses together rather than refer separately to each brief and the counter points raised in it.

Appellants in their first point on appeal say that the court erred in rendering judgment for appellees because the pleadings and exhibits show that there was a dedication of the lakesite in question to a particular use, and a conversion of the property by appellees to an inconsistent use.

■ We are unable to agree that the lakesite was dedicated to a public use, as contended by appellants in their brief. The dedicatory words expressly provide that the streets, alleys and easements shown on the plat shall be dedicated to the public use forever. But the lakesite is not mentioned. The omission of the lakesite from the words of dedication must be construed under the circumstances to mean that the lakesite was excluded from the dedication. City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d 1034.

■ Any doubt about the matter is certainly removed when we examine the deed restrictions. For there control of the lake is given to an association to be formed by the property owners in the additions, not to the public. Hogue v. Glover, Tex.Civ.App., 302 S.W.2d 757 (Syl. 7); Evans v. Southside Place Park Association, Tex.Civ.App.,

154 S.W.2d 914 (Syl. 6). There is nothing in the record to show that the property owners ever formed the association, but their failure to do so does not transform the deed restrictions pertaining to the lakesite unto a dedication to public use. Appellants' first point is overruled.

The second and third points of appellants are that the court erred in predicating its judgment on either the two year, three year, four year or five year statutes of limitation, because (2) the deed restrictions were expressly stated to be covenants running with the land, so limitations would not begin to run until after demand for performance was made by appellants, or a refusal made by appellees; and (3) by the terms of the deed restrictions the time from which limitations would begin running was expressly extended to January 1, 1979.

In support of their view that the statute of limitations does not begin to run until demand for performance by appellants, or refusal by appellees, appellants cite the cases of Louisville & N. Ry. Co. v. Pierce, 313 Ky. 189, 230 S.W.2d 430, 17 A.L.R.2d 1244, and Parks v. Hines, Tex.Civ.App., 68 S.W.2d 364. Neither of these cases is in point here.

In the Louisville & N. Railroad case, the Railroad bound itself by contract with abutting property owners to build two passways under the railroad right-of-way. No time limit for performance was stipulated. The agreement was an *affirmative* covenant running with the land. Time marched on, but the railroad did nothing either to perform or to refuse to perform. Adjoining property owners, until they made demand for performance did not know, and under the circumstances could not know from any word or act by the Railroad Company that it did not intend to construct the passways. Thus it may correctly be said that so far as the adjoining landowners were concerned, the railroad did not violate its agreement until it failed or refused to perform following demand from the property owners. From the date of such repudiation and vio-

lation limitations began to run, not from the date of the contract. A similar situation is presented in the other case cited by appellants.

No such situation faces us in this case. The affirmative action was up to the appellants, not to William R. Hogge, the original developer of the real estate addition, or the other appellees. The restrictions provided that appellants and other adjoining property owners might form an association and take over control of the lake. It is undisputed that no such organization was ever formed. The record shows that appellee Hogge conveyed the lakesite to appellees Harris and Boyd in November 1950. At the time of this conveyance Harris and Boyd were filling in the lakesite with dirt. These acts, the conveyance of the lakesite by Hogge, the addition developer, and the filling in of the site by Harris and Boyd, were violations of the deed restrictions, open and notorious, and limitations began running from the date of said violations in November 1950. Eustis v. Cowherd, 4 Tex.Civ.App. 343, 23 S.W. 737; 21 C.J.S. Covenants §§ 88, 125, pp. 946, 994.

■ There is no merit in appellants' contention that limitation does not begin to run until January 1, 1979. The contention is based on this provision in the restrictions: "these covenants * * * shall be binding on all parties and all persons claiming under them until January 1, 1979 * * *". The provision merely states the duration of the restrictions. It does not undertake to state the law of limitation applicable to a cause of action for breach of the restrictions.

■■ Appellants alleged cause of action for fraud was barred after two years from the time of the discovery of the fraud, or from the time the fraud should have been discovered by the exercise of reasonable diligence. Art. 5526, par. 4, Vernon's Ann. Civ.St.; 28 Tex.Jur. 124; 20-A Tex.Jur. 152–156. It is undisputed that the breach

of covenant in this case occurred in 1950, and that the breaches were open and unconcealed. Limitations began to run against appellants on their suit for breach of deed restrictions in 1950 when appellees violated the restrictions. When appellants filed their suit in 1957 their cause had become barred under the two and four year Statutes of Limitations. Arts. 5526, par. 1, 5527, V.A. C.S.; City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448; Schnitzendable v. Hasting, Tex.Civ.App., 97 S.W.2d 715; Eustis v. Cowherd, 4 Tex.Civ.App. 343, 23 S.W. 737.

■ Several appellees in counter points assert that all of appellants except Lawrence J. Grundy and wife acquired title to their lots after the breach of the covenants in 1950, consequently they have no right to maintain a suit for damages for the breach.

We agree with appellees. In Compton v. Trico Oil Co., Tex.Civ.App., 120 S.W.2d 534 (Syl. 7) with reference to suit for damages, it is said "One in whose time a covenant running with the land is broken is the proper person to bring action for the breach thereof, and the conveyance of the fee after such breach does not operate as an assignment of the right of action to the grantee." See also 7 R.C.L. 1193; 21 C.J.S. Covenants § 82, p. 940; Tiffany "Law of Real Property", Sec. 1022 (3rd Ed.).

We overrule appellants' second and third points.

■ In their fourth point appellants claim title by reliction to parts of the lakesite adjoining their lots. Their position is untenable for several reasons. (1) The doctrine of reliction is not applicable when the reliction does not result from natural causes, but is the result of the work of man. Here it is undisputed that the lakesite was filled in by two of appellees, who hauled in fill dirt. (2) The conveyances by which appellants hold title show that the lots were platted by lot and block number and have

fixed dimensions. The shore line of the lake is not referred to as a boundary. So the title of appellees did not follow the receding shore line of the lakesite. Tyler v. Gonzales, Tex.Civ.App., 189 S.W.2d 519. (3) In Texas the doctrine is not applicable to lakes. Welder v. State, Tex.Civ.App., 196 S.W. 868. (4) Appellants Ernest I. Fudge and wife, and Corbie C. Eberhart and wife purchased from appellee Boyd that part of the lakesite in controversy abutting their respective lots. By so doing they recognized title in Boyd to the land they purchased from him. Houston Oil Co. of Texas v. Pullen, Tex.Com.App., 272 S.W. 439; Hardy v. De Leon, 5 Tex. 211.

■ In answer to appellants' plea of title by reliction appellees plead title in themselves under the three and five year statutes of limitation. By affidavit they assert that they have for more than three years held peaceable and adverse possession of the land in dispute under title or color of title. They also assert that they have for more than five years held peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying same and paying taxes thereon and claiming under a deed or deeds duly registered. These assertions are not denied by appellants. The claim of title of appellants was barred by the three and five year statutes of limitation. Arts. 5507, 5509, V.A.C.S.

Appellants' fourth point is overruled.

Appellants' fifth point is that if they are not entitled to maintain their actions as a matter of law under their second and third points, then said issues become issues of fact and appellees were not entitled to summary judgment. Their second and third points assert only issues of law. They do not present any fact issues.

Appellants' fifth point is overruled.

The judgment of the trial court is affirmed.