TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-04-00453-CV






Charles E. Willis d/b/a Willis Inspection Service



v.



Bay North Homeowners Association, Inc.







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT

NO. 21444A, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Charles E. Willis d/b/a Willis Inspection Service appeals a summary judgment
granted in favor of Bay North Homeowners Association on Willis's third-party action. Jim and
Sandra Breashears sued Willis for an allegedly faulty pre-purchase inspection of their condominium. 
Willis sued the Association for contribution and indemnity. See Tex. Civ. Prac. & Rem. Code Ann.
§ 33.016(a) (West 1997); Tex. R. Civ. P. 38(a). The Association's summary judgment claimed that
Willis could not prevail on his third party action because the Association did not owe a duty to the
Breashearses and because there was no evidence that it breached any alleged duty owed to them.

 Willis asserts that the district court erred in granting summary judgment for the
Association on his derivative claims because the Association owed a duty to the Breashearses as a
matter of law and because there are genuine issues of material fact concerning its breach of that duty. 
We conclude that the Association should not have prevailed on its motion for summary judgment
under rule 166a(c) because it did not negate the issue of its duty to the Breashearses as a matter of
law. We also conclude that the Association should not have prevailed on its motion for summary
judgment under rule 166a(i) because Willis produced more than a scintilla of evidence raising a
genuine issue of material fact on the issue of the Association's breach of its duty. Accordingly, we
reverse the summary judgment order and remand to the district court.



BACKGROUND


 Charles Willis is a licensed real estate inspector. In July 2001, Jim and Sandra
Breashears hired Willis to conduct a pre-purchase inspection of a condominium located in Horseshoe
Bay North, a subdivision in Burnet County. Willis's inspection report identified signs of water
penetration in the garage and on the ceiling by the front door, as well as rotted wood on the exterior
of the condominium. The report emphasized that "in any area where there is rot/deterioration, there
is always the possibility of concealed damage." 

 In August 2001, the Breashearses purchased the condominium at issue from Michael 
and Sandra Taylor. The condominium was subject to the covenants in the Horseshoe Bay North
Development Supplementary Declaration of Covenants and Restrictions recorded in the deed records
of Burnet County. Reservations in the Breashearses' warranty deed from the Taylors made the
condominium's conveyance subject to the covenants that were in effect and shown of record in
Burnet County. 


 The Covenant for Maintenance Assessments in Article IV, section 2 of the
Declaration authorized the Association to collect assessments for the "improvement and
maintenance" of the condominium's "building exteriors, including but not limited to repair and
replacements thereto." "Building exterior" is defined in the Declaration as "the exterior sides and
roof of any permanent structure on any Lot, exclusive of exterior glass surfaces." 

 The General Provisions in Article VII, section 1 of the Declaration demonstrate that
the covenants and restrictions were intended to "run with and bind the land" and 


inure to the benefit of and be enforceable by Bay North Homeowners Association,
or the Owner of any land subject to this Declaration, their respective legal
representatives, heirs, successors and assigns, for a term of thirty (30) years from the
date that this Declaration is recorded, (1) after which time said covenants shall
automatically be extended for successive periods of ten (10) years unless an
instrument signed by eighty (80%) percent of the then Owners of the Lots has been
recorded agreeing to change said covenants and restrictions in whole or in part.



The covenants and restrictions were also intended to be enforceable at law or equity against any
person "violating or attempting to violate any covenant or restriction" to restrain the violation,
recover damages, or enforce any lien created by the covenants against the land.

 Within a month of taking possession, the Breashearses discovered "extensive roof
leaks and mold infestation in parts of the house (2) and ventilation system, requiring the house to be
almost completely gutted and rebuilt." They sued Willis for negligence, fraud, misrepresentation
and violation of the Deceptive Trade Practices Act. See Tex. Bus. & Com. Code Ann. §§ 17.01-.885
(West 2002 & Supp. 2004-05). (3) 

 Willis filed a third-party action against the Association for contribution and
indemnity. The Association answered and sought leave to file a third-party suit against the
Breashearses' real estate agents. At the hearing on the motion for leave, counsel for the Breashearses
informed the court that he would have to disqualify himself if the court allowed the Breashearses'
agents into the suit because of his long-standing representation of the agents' employer. The court 

sua sponte suggested to the Association's counsel,"[I]t seems to me that before we complicate this
thing further and possibly conflict out the [Breashearses' counsel] and so forth, perhaps you ought
to examine your summary judgment potential."

 The Association then sought judgment under Texas Rules of Civil Procedure 166a(c)
and 166a(i), denying the existence of a duty to the Breashearses and denying the breach of any
alleged duty. They also objected to the affidavits Willis offered to refute their motion. After a
hearing, the district court struck the challenged portions of the affidavits and signed an interlocutory
order granting the Association's motion without stating the basis for its ruling. The court
subsequently severed Willis's claims against the Association. Willis's appeal presents two issues,
structured in his brief as a "primary issue" with three "sub-issues," asserting that the district court
erred in granting judgment for the Association because the Association owed the Breashearses a duty
as a matter of law and because genuine issues of material fact exist concerning the Association's
breach of that duty.



ANALYSIS


Standard of Review 

 We review the district court's grant of summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a motion for summary
judgment under rule 166a(c), the movant must conclusively negate at least one essential element of
the nonmovant's cause of action or conclusively prove each element of its affirmative defense,
thereby showing that it is entitled to judgment as a matter of law and that no genuine issues of
material fact remain. Tex. R. Civ. P. 166a(c); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23
(Tex. 1999).

 By advancing a motion for judgment under rule 166a(i), the movant asserts that there
is no evidence of one or more essential elements of a claim or defense that the nonmovant would
have the burden to prove at trial. See Tex. R. Civ. P. 166a(i). Unless the nonmovant produces
summary judgment evidence raising a genuine issue of material fact on the challenged elements, the
court must grant the motion. Tex. R. Civ. P. 166a(i) & cmt. 1997; Western Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005). 

 In reviewing a no-evidence claim, we view the evidence in a light that tends to
support the finding of the disputed fact and disregard all evidence and inferences to the contrary. 
Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002). A genuine issue of
material fact exists if more than a scintilla of evidence establishing the existence of the challenged
element is produced. Ford Motor Co. v. Ridgeway, 135 S.W.3d 598, 600 (Tex. 2004). More than
a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Id. Conversely, when evidence offered to prove
a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it
is no more than a scintilla and, in legal effect, is no evidence. Id. 

 Because the trial court's order granting summary judgment does not specify the basis
for the ruling, we must affirm the summary judgment if any of the theories presented to the trial court
and preserved for appellate review are meritorious. See Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 217 (Tex. 2004).



Willis's Third-Party Claim

 Willis argues that summary judgment was inappropriate because the Association
owed the Breashearses a contractual duty to "maintain and/or repair" the building exteriors of their
condominium, including the exterior sides and roof. The existence of a legal duty is a question of
law for the court to decide, and that determination is made from the facts surrounding the occurrence
in question. Tri v. J.T.T., 162 S.W.3d 552, 563 (Tex. 2005). 

 Under rule 38(a), a defendant may bring a third-party action to join a party who may
be liable to the defendant or to the plaintiff for all or part of the plaintiff's claims against the
defendant. Tex. R. Civ. P. 38(a). A third-party action is not an independent cause of action, but is
derivative of the plaintiff's claim against the responsible third party. Eslon Thermoplastics v.
Dynamic Sys., Inc., 49 S.W.3d 891, 902 (Tex. App.--Austin 2001, no pet.) (citing Shoemake v.
Fogel, Ltd., 826 S.W.2d 933, 935 (Tex. 1992)). The civil practice and remedies code allows suits
against a "contribution defendant" defined as "any defendant, counterdefendant, or third-party
defendant from whom any party seeks contribution with respect to any portion of damages for which
that party may be liable, but from whom the claimant seeks no relief at the time of submission." 
Tex. Civ. Prac. & Rem. Code Ann. § 33.016(a). 

 Willis's pleadings allege that the Association



owed a duty to the Plaintiffs [Breashearses] to repair, replace and maintain the
building exteriors of Plaintiffs' condominium, which include the exterior sides and
roof of any permanent structure on any lot. . . . [The Association] breached its duty
to maintain and repair the building exteriors of Plaintiffs' home by failing to make
repairs and/or by failing to adequately complete all repairs needed.



Because Willis's third-party claims are derivative of the Breashearses' right to recover from the
Association, Willis cannot pursue a third-party claim against the Association if the Breashearses
cannot bring a direct claim against it. See Eslon Thermoplastics, 49 S.W.3d at 902.



The Association's Duty to the Breashearses as a Matter of Law

 Relying on the Covenant for Maintenance Assessments in the Declaration, Willis
contends that the Association had a contractual duty to "maintain and/or repair" the building
exteriors of the condominium:


The Declarant (4) for each Lot owned by it hereby covenants and each Owner of any Lot
by acceptance of a deed therefor, whether or not it shall be so expressed in any such
deed or other conveyance, shall be deemed to covenant and agree to pay to the
Association: (1) annual assessments or charges. . . . Said assessments shall . . . be
used for the improvement and maintenance of the common properties and the
building exteriors, including but not limited to repair and replacements thereto and
for the cost of labor, equipment, materials, management, and supervision thereon. . . .



 The Association agrees that "the Declaration sets forth a duty by which it must
maintain the exteriors of all buildings." It further agrees that the covenant at issue runs with the land
and is a contract--but not with the Breashearses. The Association's motion under rule 166a(c)
argues that it did not owe a duty to the Breashearses as a matter of law because the repairs, or lack
thereof, occurred before the Breashearses owned the condominium. In support of its assertion, the
Association pointed to "the sales contract signed by the Breashearses," but it erroneously attached
the sales contract for the Taylors' purchase of the condominium. Because the sales contract from
the Taylors to the Breashearses is not in the record and was not presented to the district court, it
cannot support the Association's summary judgment. See Tex. R. Civ. P. 166a(c); Gandara v.
Novasad, 752 S.W.2d 740, 743 (Tex. App.--Corpus Christi 1988, no writ). 

 The Association also relies on two cases stating that "one in whose time a covenant
running with the land is broken is the proper person to bring an action for the breach thereof, and the
conveyance of the fee after such breach does not operate as an assignment of the right of action to
the grantee." Fudge v. Hogge, 323 S.W.2d 663, 667 (Tex. Civ. App.--Dallas 1959, no writ);
Compton v. Trico Oil Co., 120 S.W.2d 534, 538 (Tex. Civ. App.--Dallas 1938, writ ref'd). The above cases are distinguishable from this one. Fudge involved a conflict over
a lakesite's dedication to public use and a determination that the statute of limitations began to run
when appellees filled the lakesite with dirt, which was an "open and notorious" violation of deed
restrictions. 323 S.W.2d at 667. Compton involved a title dispute that arose after the assignment
of an oil and gas lease to a grantee who took his interest with actual knowledge of the title warranty's
breach and with the grantor's promise to "clear up the title." 120 S.W.2d at 538. 

 A case cited in Compton is more parallel to the facts of this case. See Shannon v.
Childers, 202 S.W. 1030 (Tex. Civ. App.--El Paso 1918, writ ref'd). In Shannon, the Shannons
conveyed several tracts of land by general warranty deed to Fischer, who later conveyed the same
tracts by general warranty deed to Childers. Id. at 1030. After a re-survey of the land, Childers
learned that the property Fischer had purportedly sold to her had been erroneously surveyed and was
nonexistent. Id. at 1031. The State voided the erroneous survey. Id. Childers sued the Shannons
on the covenant of warranty in their deed to Fischer. Id. at 1031. The Shannons argued that they had
no title to the tract in question at the time they conveyed to Fischer, and because their covenant of
warranty was broken when made to Fischer, it ceased to run with the land, leaving no right of action
upon the covenant to pass to Fischer's purchaser, Childers. Id. 

 Ruling for Childers, the court noted that the forfeit of the erroneous survey constituted
a breach of the covenant of warranty:


It [the survey's forfeit] was the final act in the complete failure of any shadow of title
to the survey, and was a constructive eviction. And since it occurred after the
conveyance to Mrs. Childers, the breach of the covenant was finally consummated
while she was the owner, and the cause of action arising from the breach then accrued
to her. Upon this view of the case, she was not an assignee subsequent to the breach.



Id. at 1031-32; see also Siebert v. Bergman, 44 S.W. 63, 63-64 (Tex. 1898) (quoting Post v.
Campau, 3 N.W. 272, 274 (Mich. 1879) (technical breach of covenant may have taken place at time
deed was delivered; but as no damage followed from breach until claimant's purchase over ten years
later, rule that claimant's right of action is deemed to have arisen at delivery of deed involves this
"manifest absurdity: that claimant's remedy was barred before he was damnified; a result that can
scarcely be consistent with any just or proper rule of law")).

 This case concerns the "extensive" concealed (5) damage resulting from the
Association's alleged breach of a covenant to "maintain and/or repair" (6) that went undiscovered and
undisclosed, according to the Breashearses, until after they moved into their condominium. Because
of this alleged breach, the Breashearses became responsible for exterior condominium maintenance
that the Association may not have performed. The Taylors' deed to the Breashearses for the sale of
the condominium incorporated the Declaration's covenants by reservation. The Association agrees
that the covenant at issue runs with the land, and that "the Declaration sets forth a duty by which it
must maintain the exteriors of all buildings." "Improvement and maintenance" of the building
exteriors, according to the Declaration, "includ[es] but [is] not limited to repair and replacements"
of the "exterior sides and roof of any permanent structure on any Lot, exclusive of exterior glass
surfaces." The Association agrees that the Declaration is a contract. Neither party claimed that the
Declaration was ambiguous.

 We may determine the parties' rights and obligations under an unambiguous contract
as a matter of law. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). The
Association asserts that after the Taylors conveyed to the Breashearses, the Declaration's covenant
to maintain the building exteriors of the condominium ceased running with the land, and without an
assignment, the Taylors did not pass any right of action against the Association on that covenant to
the Breashearses. But similar to the original covenantors in Shannon, the Association's alleged
breach of the covenant was "finally consummated" while the Breashearses were the owners of the
condominium, and the cause of action arising from the alleged breach then accrued to them. Thus,
contrary to the Association's contention, the Breashearses do not require an assignment from the
Taylors to sue the Association because the Breashearses' ownership was not subsequent to the
alleged breach.

 We conclude, as a matter of law, that the Association failed to negate the issue of its
duty to the Breashearses. It had an ongoing, contractual duty to maintain the building exteriors of
the condominium under its covenant in the Declaration, which ran with the land from the Taylors
to the Breashearses. See Shannon, 202 S.W. at 1031-32; see also Siebert, 44 S.W. at 63-64. Willis's
third-party action against the Association is not legally barred because the Breashearses could have
brought a direct claim against the Association. See Eslon Thermoplastics, 49 S.W.3d at 902. 
Accordingly, we sustain Willis's first issue.



Evidence of the Association's Breach of Duty Owed to the Breashearses

 Having established that the Association had a duty to maintain the building exteriors
of the Breashearses' condominium, we must decide whether Willis produced more than a scintilla
of evidence raising a genuine issue of material fact about the Association's breach of its duty. The
Association's motion under rule 166a(i) argues that there is no evidence that it breached a duty to
the Breashearses. To refute the Association's motion, Willis produced his inspection report, the
affidavit of Francisco Gonzales, and the affidavit of Sandra Breashears. The court struck one
statement in Gonzales's affidavit as hearsay. (7) 

 Willis's July 2001 report stated that the "roof covering" of the condominium was
observed from "either ground and/or eave levels," with the use of binoculars. He noted that the
concrete/clay roofing tiles showed "normal wear for age," but he found that the "potential for water
entry [wa]s present" and recommended "securing the flashing at the fire wall between the two units,
above the left overhang area at the left of the house." He also noted that the ceiling in the garage had

been repaired "from a roof leak" and that the ceiling by the front door had water stains. He observed
multiple locations of rot: on the bottom right side of the overhead garage door trim, on the high soffit
at the left front side of the house, on the soffit to the left side of the structure, and on the high soffit
at the rear of the house. His report concludes with the following statement, in all capital letters: "In
any area where there is rot/deterioration, there is always the possibility of concealed damage." 

 The affidavit of Francisco Gonzales offers evidence of the condominium's condition
before Willis's inspection. Although the court sustained a hearsay objection to one sentence in
Gonzales's affidavit, it did not rule on any other objection. In the remaining portion, Gonzales
averred that he owns a home improvement company specializing in roofing repair and that he has
been in the roofing business for over 30 years. He testified that he has repaired condominiums in
the Bay North development in Horseshoe Bay since 1990. He also testified that in the fall of 2000,
Charlie Tenbush, an agent for the Association, asked him to meet with an insurance adjuster to
inspect the roof of the condominium unit at issue, as well as the adjoining unit. 

 Gonzales recalled


[a]t that time, I told Mr. Tenbush and the insurance adjuster that the siding and trim
on [the condominium] needed additional repairs. In my opinion, the work needed at
that time was routine maintenance and repair due to aging of the structure, and was
not due to storm damage. I gave the insurance adjuster an estimate to repair the tile[]
damage caused by a storm, at his request. I was paid by Bay North Homeowners
Association to replace the broken or loose tiles, only. I turned in a proposal to repair
the broken tiles and to change out the rotten siding and trim boards to prevent water
penetration.



 Gonzales's affidavit, even without the struck sentence, shows that the siding and trim
boards, as well as the tiles on the roof of the condominium in question, needed "maintenance and
repair" in 2000. The Association paid him "to replace the broken or loose tiles, only" despite the
fact that he had proposed completion of the tile repair and "chang[ing] out the rotten siding and trim
boards to prevent water penetration."

 The Association dismisses this evidence by stating that it "does not show that the
repairs were in fact not completed" and that Willis did not "establish" a breach of duty. But Willis
did not have to prove that the Association failed to "complete" repairs to defeat the rule 166a(i)
motion; he only had to point out evidence raising a fact issue on the Association's breach of its duty
to maintain. See Tex. R. Civ. P. 166a(i) & cmt. 1997; Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002). 

 Willis's evidence shows that the Association only paid for roof tile replacement in
2000, even though Gonzales, their long-time professional roofer, recommended changing the rotten
siding and trim boards to prevent water penetration. In 2001, Willis reported that the roofing tiles
showed normal wear but the potential for water entry was present. He also noted the rot visible at
multiple locations, including the overhead garage door trim and the soffits on the side and rear of
the house; he cautioned that concealed damage was possible in any area with rot. Two months after
Willis's inspection, the Breashearses discovered their condominium's "extensive leaks."

 We find that the chronology of events documented by Willis's report and Gonzales's
affidavit would cause reasonable and fair-minded people to differ in their conclusions about whether
the Association performed the "improvement and maintenance" of the condominium's "building
exteriors" as required by the Declaration. Therefore, we conclude that Willis produced more than
a scintilla of evidence raising a genuine issue of material fact concerning the Association's breach
of its ongoing, contractual duty to maintain the condominium's building exteriors that was imposed 
by the Declaration and owed to the Breashearses. Willis's second issue is sustained.



CONCLUSION


 Because the Association did not negate the issue of its duty to the Breashearses as a
matter of law, it should not have prevailed on its motion for summary judgment under rule 166a(c). 
Furthermore, because Willis produced more than a scintilla of evidence raising a genuine issue of
material fact on the issue of the Association's breach of its duty, the Association should not have
prevailed on its motion for summary judgment under rule 166a(i). Having concluded that the
Association was not entitled to judgment under either rule, we reverse the summary judgment order
and remand to the district court for further proceedings.


 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed: August 3, 2005
1. The Declaration was recorded on June 19, 1981, and is still in its initial thirty-year period.
2. Although the Breashearses called their property a "house," the pleadings show that their
reference is to the condominium unit at issue in this appeal.
3. The Breashearses also sued Michael and Sandra Taylor, who were the condominium
sellers, and Kent Lesley, the Taylors' real estate agent. The Breashearses did not sue the
Association.
4. The Declaration states that the Declarant, Horseshoe Bay North Development, delegates
and assigns to the Association the powers of "maintaining and administering the community" and
"administering and enforcing the covenants and restrictions."
5. Willis's report cautioned that a visual inspection of the condominium might not detect the
"concealed damage" that was possible in any area with "rot/deterioration."
6. "Repair" is mentioned as a specific subset of "maintenance" in Article IV, section 2 of the
Declaration. The Covenant for Maintenance Assessments states that "improvement and
maintenance" of the building exteriors includes but is not limited to "repair and replacement." We
will refer to the obligations in this section of the Declaration as the covenant or duty to "maintain."
7. The court also struck the hearsay portions of Sandra Breashears's affidavit, but Willis
waived any complaint about this ruling by failing to brief this issue. Tex. R. App. P. 38.1(h).