Edward Joseph **DRYDEN**, Jr., **Plaintiff,**

v.

**Elaine Wright CALK, et al., Defendants.**

**Civ. A. No. L–89–10.**

United States District Court,
S.D. Texas,
Laredo Division.

June 17, 1991.

Emilio Davila, Jr., Laredo, Tex., for plaintiff.

Patton G. Lochridge, Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment. Plaintiff, Edward J. Dryden, is suing the Defendants, members of the Wright family, for their alleged breach of a covenant to provide road, water and sewage connections to land under a letter agreement made with Dryden Real Estate, Inc. (DRE). Plaintiff Dryden claims as DRE's successor-in-interest, being the sole remaining shareholder of DRE, a now-defunct corporation. The Defendants argue that the Plaintiff has no standing to bring this lawsuit and, in the alternative, that the covenant involved in the dispute is one which runs with the land and is, therefore, unenforceable by the Plaintiff.

Originally, Plaintiff sued for "plenary/exemplary" damages, the imposition of a constructive trust, and an accounting. Plaintiff concedes that those claims are without merit, and summary judgment is granted in Defendants' favor as to those claims.

*Factual Background.* Prior to 1977, Defendants owned a large parcel of land extending eastward from U.S. Highway 83 on the south side of the City of Laredo in Webb County, Texas. *See* Exhibit # 1. The rectangular parcel was divided into three tracts [hereinafter "Tracts 1", "2", and "3"]. Tract 3 was a rectangle with its western line bordering on the highway. Tract 2 was a similar rectangle directly east of Tract 3. Tract 1, the focus of this dispute, was a 217–acre rectangular parcel directly to the east of Tract 2. Its western edge bordered on Tract 2's eastern edge, resulting in Tract 1 having no access to Highway 83 but through Tracts 2 and 3.

In 1977, DRE bought this entire parcel from the Defendants, executing purchase

money notes in their favor. Afterward DRE conveyed the southernmost 77 acres of the 217 acres of Tract 1 to the Mountain View Development Group (MVD), a joint venture of which Dryden was a participant. DRE retained the northern 140 acres of Tract 1. MVD later sold the 77 acres in parcels to various purchasers. Dryden Deposition p. 33, lines 1–18. MVD retained an interest in approximately 5 acres of the lower 77 acres of Tract 1, and Plaintiff Dryden personally became trustee for those 5 acres, designated as "Lot F" in the record.

In 1981, DRE, in financial distress, was unable to make its payments on the notes. DRE offered to return Tracts 2 and 3 to Defendants in exchange for cancellation of the notes. Defendants agreed, and the arrangement was memorialized in a letter agreement on February 10, 1981 [hereinafter "Letter Agreement"]. The agreement included a clause requiring the Defendants, if and when they sold Tracts 2 and 3, to provide in any contracts with third-party purchasers that such third parties would within four years construct a paved roadway with water and sewer lines across Tracts 2 and 3 "to a point of intersection in the 140 acres owned by Dryden Real Estate, Inc. in Parcel 1." Letter Agreement, p. 8, ¶ 2. This transaction was handled through Lawrence A. Mann, trustee for the Wright family.

Sometime during 1981–82, DRE conveyed its interest in the 140 acres of Tract 1 to MVD. In September 1982, MVD conveyed the 140 acres to a development group headed by Lawrence Mann.

The Wrights later sold Tracts 2 and 3 to third parties. It is undisputed that the Wrights placed the stipulated covenants in the contracts with the third-party purchasers, pursuant to the Letter Agreement of 1981. Dryden sued the Wrights for breach of the agreement since the work was not completed within the contemplated four years of the sale by the Wrights to third parties. In fact the Wrights and the third-party purchasers agreed upon an extension of time.

*Standing.* Defendants have raised as an issue the standing of the Plaintiff to sue upon the Letter Agreement. The Court will defer ruling on this point since Plaintiff's standing will necessarily be determined by this Court's resolution of the nature of the covenant at issue here.

■ *Personal vs. Real Covenant.* Under Texas law, a real covenant is a covenant which "runs with the land." A covenant "runs with the land"

> when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice.

*Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987). Texas courts also require "privity of estate" as a condition to finding a real covenant. *Westland Oil Dev. Corp. v. Gulf Oil,* 637 S.W.2d 903, 910–11 (Tex.1982). The tests for whether a covenant "touches and concerns the land" are "far from absolute [and] ... courts have consistently relied upon rather general statements in their analyses of the ... requirement." *Westland Oil,* 637 S.W.2d at 911. One commentator has characterized the "touch and concern" requirement as follows:

> If the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land.

*Mobil Oil Corp. v. Brennan,* 385 F.2d 951, 953 (5th Cir.1967) (quoting Clark, *Real Covenants and Other Interests Which "Run With Land"* 97 (2d ed. 1947)).

In this case, the covenant to construct a road and lay water and sewage lines burdens Tracts 2 and 3 and will be of substantial benefit to Tract _, clearly touching and concerning the land in question. *See Beckham v. Ward Cty. Irrig. Dist. No. One,*

278 S.W. 316, 318 (Tex.Civ.App.—El Paso, 1925, writ ref'd) (construction of flume to irrigate land); *see also* 20 Am Jur.2d *Covenants, Conditions, and Restrictions* § 38 (1965). However, the Wrights did not actually covenant to construct anything. The Letter Agreement between Plaintiff and the Wrights specifically provides that:

> In connection with any contract which you [the Wrights] may hereafter enter into ... with any third person for the purchase ... of Parcels '2' and '3', it is agreed that [the Wrights] shall provide in said contract for the following commitments on the part of said third parties for the mutual benefit of yourselves and Dryden Real Estate Inc.

Letter Agreement, p. 7. The Letter Agreement then details the requirements for the construction of road, water, and sewage connections to the northern 140 acres of Tract 1 within four years of the closing of the Letter Agreement. The agreement adds this condition:

> ... should any third party purchasers from [the Wrights] fail to purchase all of the lands within Parcels '2' and '3' that said parties shall be relieved of certain contractual commitments to you ... by payment of a $200,000.00 liquidated damage payment. This payment shall belong to you and Dryden Real Estate Inc. shall have no right or claim therein. However, you agree that in such an event [the Wrights] shall give Dryden Real Estate Inc., written notice ... of the occurence [sic] of such event and Dryden Real Estate Inc. shall then have, for a six (6) month period from date of mailing of such written notice, a continuing option to purchase from you for cash all remaining lands within Parcels '2' and '3' not theretofore conveyed to third parties by [the Wrights] at the price set forth in the contract which [the Wrights] will enter into with said third parties....

Letter Agreement, p. 8. The Letter Agreement further states that any contract entered into by the Wrights must require that purchasers plat the parcels in such a way as to allow DRE to extend the connections to Tract 1 "at its sole cost and expense...." Letter Agreement, p. 9.

From this language the Court concludes that the actual agreement between DRE and the Wrights was only for the inclusion of covenants in future agreements with third parties. It is a contract for future performance by the Wrights, *i.e.*, creating covenants with third parties. As such, the agreement in dispute here is not a real covenant, for it does not touch and concern the land to such a degree that it can be said to "run with the land."

■ *Breach of Contract.* The law disfavors burdening the free alienation of land. Consequently, restrictions in deeds and contracts for the sale of land are construed against the party who drafted such provisions and in favor of free alienation. *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth*, 578 S.W.2d 109 (Tex.1978). A contract is construed through the intent of the parties as expressed within its four corners. *Houston Lighting & Power v. Tenn–Tex Alloy & Chemical Corp.*, 400 S.W.2d 296 (Tex. 1966). The intent of the parties in a contract is a question of law for the court. *Farm & Home Sav. Ass'n. v. Strauss*, 671 S.W.2d 682 (Tex.Civ.App.—Dallas, 1984, no writ). The question is whether the Wrights breached the obligations undertaken by them in the Letter Agreement.

■ It is undisputed that the Wrights, through their trustee Lawrence Mann, placed the required covenants in their agreements with third-party purchasers for the sale of parcels in Tracts 2 and 3 and did not breach the Letter Agreement in that regard. Although the subsequent purchasers did not construct the designated connections to the northern 140 acres of Tract 1 within the stipulated four-year period, Dryden admits that the Wrights themselves were not personally responsible for the construction of the roadway and water and sewer lines. Dryden Deposition, p. 65, lines 9–15. He alternatively claims[1] that

---

1. This claim is not raised in Dryden's pleadings, but rather first appears in his response to the Defendants' motion for summary judgment.

he was harmed by the Wrights' failure to give him notice, as set forth under the Letter Agreement. The language of the Letter Agreement indicates that the notice requirement was to be triggered by the failure of the third-party purchasers to buy the entirety of Tracts 2 and 3 and their payment of $200,000 in liquidated damages to the Wrights. Letter Agreement, p. 8. Dryden has not claimed that the third-party purchasers failed to purchase all of Tracts 2 and 3 or that the liquidated damages were paid, and everything in the record points to the contrary. Accordingly, the notice requirement was never triggered. Moreover, even were the notice provision triggered, it would have only given DRE a six-month option to purchase from the Wrights any remaining lands in Parcels 2 and 3 not already conveyed to third parties. There are apparently no such unconveyed lands and there is no hint in the file that Dryden is now seeking to purchase any such lands.

■ *Lack of Justiciable Interest.* Dryden's claim is problematical for another reason. As successor-in-interest to DRE, he claims loss of value in the southern 77 acres of Tract 1 and seeks money damages for the same.

Dryden can claim under the Letter Agreement only in his capacity as successor-in-interest to DRE. In 1981, when DRE entered into the Letter Agreement, DRE owned no interest in the 77–acre portion of Tract 1. In 1982, the northern 140 acres of Tract 1 were sold to a third party, and DRE specifically negotiated that the

purchasers of the 140–acre tract would extend the roadway, sewer line, and water line to Lot F in the 77 acres. Dryden Deposition, p. 33, lines 16–24; p. 98, lines 13–16. Dryden's only remaining connection to any of the land in question is as trustee for approximately 5 acres in the 77–acre tract, and he has expressly waived any personal interest in the Letter Agreement or its terms.[2]

Upon these facts, it is apparent that Dryden lacks a justiciable interest in this matter. *Logan v. Thomason,* 146 Tex. 37, 202 S.W.2d 212, 215 (1947) ("It is contrary to the policy of the state to permit the machinery of its courts to be set in motion at the instance of one who can in no event be profited thereby"); *Edwards v. Williams,* 291 S.W.2d 783, 788 (Tex.Civ.App.—Eastland, 1956, no writ) (action to cancel deed and partition land); *Rio Grande City Consolid. Indep. Sch. Dist. v. Guerra,* 291 S.W.2d 384, 388 (Tex.Civ.App.—Waco, 1956, writ ref'd n.r.e.) (quoting *Logan, supra*); *O'Boyle v. Bevil,* 259 F.2d 506, 511 (5th Cir.1958); *see also Missouri Pacific Ry. Co. v. Cullers,* 81 Tex. 382, 17 S.W. 19, 23 (1891); 59 Am.Jur.2d *Parties* § 32 (1987). Dryden is not the proper party to seek to enforce the covenants between the Wrights and the third-party purchasers of the parcels in Tracts 2 and 3, covenants expressly in favor of the northern 140 acres of Tract 1. *See Fudge v. Hogge,* 323 S.W.2d 663, 667 (Tex.Civ.App.—Dallas, 1959, no writ).

The Defendants' Motion for Summary Judgment is GRANTED.

---

**2.** "Edward Joseph Dryden, Jr., individually joins herein for the sole purpose of representing that he claims no personal interest in any of the matters which are subject of this Letter Agreement or in any of the lands affected hereby...." Letter Agreement, p. 9.

EXHIBIT 1

Tract III    Tract II    Tract I

[140 acres]

F

[77 acres]

^
Highway 83                    N

Proposed paved access -