WALTZER, Judge,
dissenting.
This is an appeal from a February 5, 1992 judgment of the Civil District Court for the Parish of Orleans, the Honorable Frank V. Zacearía, Sr., Judge Ad Hoc, presiding. The judgment provides as follows:
“The motion for Summary Judgment urged by Public Grain Elevator of New Orleans, Inc. and Peavey Company denying the claim for damages other than the loss of support by dependents during decedent’s lifetime is maintained as a matter of general maritime law.
The motion for partial summary judgment based upon failure to allege a claim for dependency and loss of support during decedent’s lifetime is held in abeyance until March 3, 1992. During said period plaintiffs will be permitted to amend pleadings to show dependency and loss of support during decedent’s lifetime and any claim for damages arising out of any damages sustained by grain inhalation by decedent which is not work related.
*1379 The exception of prescription is denied herein.”
From that judgment plaintiff appeals.
On August 1, 1979, Percy Vedros, an employee of Louisiana Stevedoring, Inc., while unloading grain at his job as a longshoreman, collapsed with acute respiratory failure. He was diagnosed as having grain asthma, a lung disease similar to silicosis and asbestosis and which results from excessive grain dust inhalation. Mr. Vedros was placed on disability. He continued to reside at his lifelong home at 5333 Laurel Street, seven to eight blocks from the Public Grain Elevator. Plaintiff alleges that upon advice of his physician, he was forced to move from his home due to excessive air pollution from leaking grain dust. Mr. Vedros moved. On November 24, 1986, Mr. Vedros died from the lung disease grain asthma. His widow and children filed the instant suit against numerous defendants, none of whom were Mr. Vedros’ employer.
Plaintiffs’ petition alleges numerous distinct causes of action. It alleges a wrongful death suit under general maritime law, a Longshoremen’s and Harborworker’s Compensation action under 33 U.S.C. § 901 et seq., an unseaworthiness action against a non-employer third-party vessel owner, an executive officer suit, an intentional tort fraudulent concealment suit, an absolute liability ultrahazardous activity suit, a strict liability suit, a failure to warn suit, a products liability suit, a breach of warranty action to a purchaser, a breach of contract action to a purchaser, and a design defect suit. In addition, plaintiff included a “savings clause” for any additional acts provable at trial.
The original petition filed November 24, 1987 provided in part as follows:
18.
The deceased, Percy J. Vedros, Sr. was employed by Louisiana Stevedores, Inc. and other stevedoring companies during the period 1952-1979 as a longshore laborer. In the course of his employment, Mr. Vedros was required to come into contact with grain and other harmful dusts which were being loaded onto vessels. The grain and other harmful dusts were being unloaded from the defendant grain elevators and placed onboard vessels. Mr. Vedros would shovel the grain as it came into the hull of a vessel. Mr. Vedros inhaled the grain dust and chemicals used to control pests both on land and over the Mississippi River.
19.
That Public Grain Elevator of New Orleans, Inc., St. Charles Grain Elevator, Dockside Elevators, Inc., Bunge Corporation, Cargill, Inc., Continental Grain Company, Continental Reserve Elevator Corporation, Farmer’s Export Co-Op, Mississippi River Grain Inc., Peavy Company, Delta Bulk Terminal, Inc., and their executive officers knew the danger of exposure to grain dusts and other harmful dusts and that exposure to these harmful dusts was hazardous to decedent’s health, and yet they failed and refused to warn or inform the decedent of that danger, thereby exposing him to continued harm and an aggravation of his condition. The decedent, Percy J. Vedros, Sr. did contract grain asthma relative to this exposure to grain dust and other harmful dusts, and died because of that lung condition on November 24, 1986.
20.
In addition to the above described acts, these defendants are guilty of the following:
a. in failing to use proper dust control methods to reduce the risks of inhalation to the deceased;
b. in failing to reveal and knowingly concealing the dangers of the inhalation of grain dust and chemicals that are used to control pests in the grain;
c. in failing to provide necessary protection to decedent;
d. all other acts which may be revealed at the time of trial, (emphasis supplied).
*1380 21.
That defendant, American Optical Corporation, manufactured and distributed masks which were ultimately used by the decedent while he engaged in his employment in the vicinity of grain and other harmful dusts. Due to the defective nature of the equipment, decedent was caused to suffer serious injuries and death.
22.
That the defendant, Sears, Roebuck and Company, distributed and placed their name on an American Optical Corporation mask and other masks which were ultimately used by decedent while he engaged in his employment in the vicinity of grain and other harmful dusts. Due to the defective nature of the equipment, decedent was caused to suffer serious injuries and death.
23.
That the defendant, Minnesota Mining and Manufacturing Company, manufactured and distributed masks which were ultimately used by the decedent while he engaged in his employment in the vicinity of grain and other harmful dusts. Due to the defective nature of the equipment, decedent was caused to suffer serious injuries and death.
24.
That the defendant, National Union Fire Insurance Company was and is the insurer of the defendant, Farmer’s Export Co-Op, insuring it and its executive officers for the liability and damages claimed herein.
25.
Among other reasons, the defendants, American Optical Corporation, Sears, Roebuck and Company and Minnesota Mining and Manufacturing Company, were negligent in failing to produce a product reasonably fit for the purposes intended:
a. in failing to adequately and safely design its product to prevent workers from contracting grain asthma;
b. in' failing to warn of the hazards which would result from the use of their products;
c. in failing to instruct, recommend or prescribe safety precautions;
d. in failing to avail themselves of the expert and specialized knowledge which existed as to proper and reasonably safe design of their particular product;
e. in failing to inspect or prevent the hazards which resulted in the injury and death to decedent.
26.
That the defendants, American Optical Corporation, Sears, Roebuck and Company and Minnesota Mining and Manufacturing Company manufactured and distributed a mask which was unreasonably dangerous in normal use and therefore, they are strictly liable to the widow and children of Percy J. Vedros, Sr. for the injuries he received while using their product and his death.
27.
The defendants, Public Grain Elevator of New Orleans, Inc., St. Charles Grain Elevator, Dockside Elevators, Bunge Corporation, Cargill, Inc., Continental Grain Company, Continental Reserve Elevator Corporation, Farmer’s Export Co-Op, ADM Growmark River System, Inc., Peavy Company, Delta Bulk Terminal, Inc., Mississippi River Grain Elevator, Inc., n/k/a Ferruzzi USA, Inc., are strictly liable to petitioners for the following reasons: the grain is a product that is unreasonably dangerous in normal use, and, therefore, since the above named defendants had custody and control of that defective product, they are therefore strictly liable to petitioners.
All defendants are jointly, severally and in solido liable to petitioners for the damages asserted herein.
*1381 29.
That the activity of loading grain from an elevator onto a vessel, is an ultrahaz-ardous activity, i.e. that no matter what precautions are taken, there is still a risk of harm to an individual working in that grain dust. Accordingly, all of the defendants, since they were engaged together in this activity, are absolutely liable to the widow and children of the decedent, Percy J. Vedros, Sr. for his injuries and death.
30.
Solely by reason of the defendants’ negligence and acts of strict liability, the petitioner was caused to contract grain asthma. He suffered from that condition and it later caused his death. His widow and children have been denied his love, consortium and companionship. They have been denied his inheritance which would have been considerably larger had he been able to work.
31.
That the defendants, American Optical Corporation, Sears, Roebuck and Company and Minnesota Mining and Manufacturing Company are also liable to petitioner under the theory of breach of warranty and breach of contract. Decedent, Percy J. Vedros, Sr. purchased the Sears, Roebuck and Company dust mask that was manufactured by American Optical Corporation and other companies and it was warranted to him at the time that the product was good for .its intended use, that is, for protection against grain dust and other harmful dusts. However, in fact, the product was defective and did not provide the warranted and contracted protection. Therefore, these defendants breached their warranty and contract to decedent.
Plaintiff’s Supplemental and Amending Petition filed March 26, 1990 added the Board of Commissioners of the Port of New Orleans a defendant and the owner of the Public Grain Elevator, which it also operated until 1964 when it leased the elevator to Public Grain Elevator of New Orleans, Inc.
Defendants Public Grain Elevator of New Orleans and Peavey Company filed motions for partial summary judgment on the grounds that in order for Mr. Vedros’s children to recover under 33 U.S.C. § 901 et seq. they must allege that they were financially dependent upon him and that they failed to allege dependency. Defendants also argued that loss of consortium is not recoverable and moved for partial summary judgment on the grounds of prescription.
After a hearing, the trial court rendered judgment providing that the partial motion for summary judgment urging denial of the claim for damages other than the loss of support by dependents during decedent’s lifetime was maintained as a matter of general maritime law, that the failure to allege a claim for dependence was held in abeyance until March 3, 1992 during which period plaintiffs would be allowed to amend their petition, that plaintiffs during such period also amend their .petition to include any claim for damages arising out of any damages sustained by grain inhalation by decedent which was not work related, and denied the exception of prescription.
On March 2, 1992, plaintiffs filed an amended petition adding two new paragraphs:
19.(a)
Prior to Percy Vedros’ injuries decedent was a strong, able-bodied man capable of earning and actually earning $40,-000.00 a year. At the time of his death he was sixty-seven years of age. Decedent’s dependents who are his widow and two major children have also suffered great pecuniary loss and damage as a result of his death. Those pecuniary losses include a loss of support, loss of inheritance, and funeral expenses.
20.(a)
Plaintiffs are also entitled to recover punitive damages under the general maritime law from the defendant grain elevators. The grain elevators’ actions and inactions as outlined in Paragraphs 19 *1382 and 20 of the petition constitute a willful and wanton misconduct reflecting a reckless disregard for the safety of the decedent and others situated like him.
The majority opinion states:
“Since plaintiffs failed to plead a land based tort ...”
Plaintiffs did plead land based torts, specifically product liability, design defect, and intentional fraudulent concealment. Additionally plaintiff pled a land-based contract action, namely the breach of warranty to a purchaser of goods purchased by him at Sears, Roebuck, i.e. on hand.
Turning to the issue of plaintiffs’ claim for damages other than loss of support, the trial court rendered the following written reasons for judgment:
“This matter came up in a motion for summary judgment filed by Public Grain of New Orleans, Inc. (hereinafter referred to as “Public Grain”) and Peavey Company, and on an exception of prescription filed by Board of Commissioners, Port of New Orleans (hereinafter referred to as “Board” (sic), all defendants herein.
The motion for summary judgment is based on the failure to claim a pecuniary loss in plaintiffs’ petition by the wife and surviving children of decedent, Perez J. Vedros, Sr. They have each claimed damages for:
1. Loss of love, affection and society.
2. Grief, mental anguish and distress.
3. Damages for physical pain and suffering of the decedent Perez J. Vedros, Sr.
In Ludwick Adam Torregano v. Apex Marine Corporation, No. 89-1158, U.S. Supreme Justice O’Connor, as organ of the Court, reaffirmed the holding in Moragne v. States Marine Lines, Inc., 398 U.S. 375, [90 S.Ct. 1772], followed in Miles v. Apex Marine Corp., [498 U.S. 19], 111 S.Ct. 317, wherein the wrongful death action allowed by the Death On High Seas Act (DOHSA) applied to seamen in territorial waters and is inclusive of longshoremen.
Torregan v. Apex, supra, also limited the recovery to loss of income of the seaman, or the support lost by dependents, during the decedent’s lifetime.
In Antill v. Public Grain, Et Al, 507 [577] So.2d 1039, (La. [App.] 4th Circuit 1991) a very similar case as the instant one, recognized a grain elevator longshoreman as a seaman and governed by federal substantive law rather than by tort law of Louisiana.
Therefore, this court must maintain the motion for summary judgment relative to the claims for loss of love, etc., as recited hereinabove ...”[1]
The trial court is correct in citing Antill, above, for the proposition that “virtually all of the cases ... in which the injury occurred during the loading or unloading of cargo have found admiralty jurisdiction (as opposed to state tort law) appropriate” (at 1042) (Emphasis supplied). The trial court is wrong, however, when it states that Antill found that a harborworker is a seaman. Although it failed to use the word anywhere with it, Antill was a federal preemption case, namely did federal admiralty law preempt state law. Admiralty law includes many different types of recovery including the Jones Act, the Longshoremen and Harbor Workers Act, the Death on the High Seas Act (DOHSA), and the general maritime law which includes unseaworthiness actions and actions for maintenance and cure among others.
Generally, the Jones Act provides tort remedies for seamen. In 1926 in International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), longshoremen were declared to be “seamen” and within the purview of the Jones Act when injured on a navigable waterway. However, after its passage the Longshoremen’s and Harbor Workers’ Compensation Act became the exclusive remedy against their employer by the injured longshoremen and effectively withdrew them from the benefits of the Jones Act. Thus after *1383 the passage of this act, a longshoreman or harborworker is never a seaman under the Jones Act. The Jones Act became available only to “true seamen”, who are defined as those who aid in the navigation of the ship.
The Longshoremen’s and Harbor Workers’ Compensation Act was intended to provide compensation for a class of employees, harbor workers, at work on a vessel in navigable waters, who although they might be classed as “seamen” were nonetheless regarded as distinct from the members of a “crew” because they were not performing the traditional work of seamen in aiding navigation. They served on vessels as laborers, at the type of work performed by longshoremen and harbor workers, and thus are distinguished from those employees on the vessel who are naturally and primarily on board to aid in navigation. Thus a harborworker inside the hold of a ship shoveling grain into the hold is never a seaman, but is always a longshoreman, even though he is physically located on a ship. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) resulted in the doctrine that state law could not constitutionally afford compensation to maritime employees. The gap created by Jensen was filled by the passage of the Longshoremen’s and Harbor Workers’ Compensation Act. It is roughly the maritime equivalent of state workers’ compensation laws.
Formerly under general maritime law there was no liability for wrongful death. The Harrisburg, 119 U.S. 199, 213, 7 S.Ct. 140, 146, 30 L.Ed. 358 (1886). In the absence of statute, it was held there could be no recovery in the admiralty courts for death on the high seas. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). In 1920, Congress passed the Death on the High Seas Act. The Death on the High Seas Act gives a right of action for pecuniary losses to the personal representative of the deceased for the exclusive benefit of the wife, husband, parent, child or dependent relative of the deceased against the vessel, person, or corporation liable for the death, when the death is caused by a wrongful act on the high seas beyond a marine league (approximately 3 miles) from the shore of any state, the District of Columbia, or the territories or dependencies of the United States. The act does not apply to injuries resulting in death occurring on water within the territorial waters of any state, i.e. within 3 miles of the coastline of the state.
The Death' on the High Seas Act is not applicable to injuries involving wrongful deaths on artificial island drilling rigs located more than a marine league off the Louisiana coast. The islands were not erected primarily as navigational aids. In enacting the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., Congress decided that these artificial islands, although surrounded by the high seas, were not themselves to be considered within maritime jurisdiction. The Outer Continental Shelf Lands Act and the law of the adjacent State furnish the appropriate remedy.
The Death on the High Seas Act, however, resulted in a gap such that longshoremen and harbor workers who died on vessels a marine league out from the state had a wrongful death action, whereas longshoremen and harbor workers doing the same jobs and killed in the same way who died on land, on the dock, on a docked vessel, or on a vessel within 3 miles of the state shore, i.e. the state’s territorial waters, had no wrongful death action.
Accordingly, in 1970 in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 408, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970), the United States Supreme Court found that an action does lie under the general maritime law for wrongful death, expressly overruling The Harrisburg, above. In Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Supreme Court distinguished the recovery allowed under general maritime law wrongful death actions from the recovery allowed under Death on the High Seas Act wrongful death actions. Because the Death on the High Seas Act only allows for “pecuniary losses” courts have interpreted the statutory language to mean that loss of society is not recoverable under DOHSA. In contrast to DOHSA wrongful *1384 death actions, the Court stated that while only recovery for “pecuniary loss” is allowed under the express language of the Death on the High Seas Act, a wrongful death action under general maritime law allows for loss of society and funeral expenses:
“Moragne, on the other hand, requires that the shape of the new maritime wrongful-death remedy (not a statutory creation but judge-made, see The Tungus v. Skovgaard, 358 U.S. 588, 611, 70 [79] S.Ct. 503 [516], 3 L.Ed.2d 524 (1959) (opinion by Brennan, J.)) be guided by the principle of maritime law that “certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules,” The Sea Gull, 21 F.Cas. 909 (No. 12,578) (C.C.Md.1865), quoted in Moragne, 398 U.S. at 387, 90 S.Ct., at 1781. Since the policy underlying the remedy is to insure compensation of the dependents for their losses resulting from the decedent’s death, the remedy should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries. No statutory language or ‘established and inflexible rules’ of maritime law require a contrary conclusion, (emphasis supplied).
>jc ⅜ ⅜ ⅝ ⅜! ‡
... under the maritime wrongful-death remedy, the decedent’s dependents may recover damages for their loss of support, services, and society, as well as funeral expenses.
Recovery for loss of support has been universally recognized, and includes all the financial contributions that the decedent would have made to his dependents had he lived. Similarly the overwhelming majority of state wrongful-death acts and courts interpreting the Death on the High Seas Act have permitted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death. Such services include, for example, the nurture, training, education, and guidance that a child would have received had not the parent been wrongfully killed. Services the decedent performed at home or for his spouse are also compensable.
Compensation for loss.of society, however, presents a closer question. The term ‘society’ embraces a broad range of mutual benefits each family member receives from the others’ continued existence, including love, affection, care, attention, companionship, comfort, and protection. Unquestionably, the deprivation of these benefits by wrongful death is a grave loss to the decedent’s dependents. Despite this fact, a number of early wrongful-death statutes were interpreted by courts to preclude recovery for these losses on the ground that the statutes were intended to provide compensation only for ‘pecuniary losses’ and that the loss of society is not such an economic loss. Other wrongful-death statutes contain express language limiting recovery to pecuniary losses; for example, the Death on the High Seas Act limits recovery to ‘a fair and just compensation for the pecuniary loss sustained by the person for whose benefit the suit is brought ...’ 46 U.S.C. § 762 (emphasis added), and consequently has been construed to exclude recovery for the loss of society.
A clear majority of States, on the other hand, have rejected such a narrow view of damages, and, either by express statutory provision or by judicial construction, permit recovery for loss of society. This expansion of damages recoverable under wrongful-death statutes to include loss of society has led one commentator to observe that ‘[wjhether such damages are classified as “pecuniary”, or recognized and allowed as nonpecuniary, the recent trend is unmistakably in favor of permitting such recovery.’ Speiser Wrongful Death 218. Thus, our decision to permit recovery for loss of society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes. But if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show ‘special solicitude’ for those who are in *1385 jured within its jurisdiction, (at 814-816).
[[Image here]]
Finally, in addition to recovery for loss of support, services, and society, damages for funeral expenses may be awarded under the maritime wrongful-death remedy in circumstances where the decedent’s dependents have either paid for the funeral or are liable for its payment. A majority of States provided for such recovery under their wrongful-death statutes. Furthermore, although there is a conflict over whether funeral expenses are compensable under the Death on the High Seas Act, compare The Culberson, 61 F.2d 194 (CA3 1932), with Moore v. the OS Fram, 226 F.Supp. 816 (SD Tex.1963) aff’d, sub nom. Wilhelm Seafoods, Inc. v. Moore, 328 F.2d 868 (CA5 1964), it is clear that funeral expenses were permitted under the general maritime law prior to The Harrisburg, see e.g., Hollyday v. The David Reeves, 12 F.Cas. 386 (No. 6,625) (Md.1879). We therefore find no persuasive reason for not following the earlier admiralty rule and thus hold that funeral expenses are compensable.” (at 818).
The Gaudet case, above, involved the widow of a seaman in territorial waters, i.e. State territorial waters within a marine league, bringing a wrongful death action based upon unseaworthiness. Gaudet returned to the lower court for further proceedings. See: 463 F.2d 1331 (CA5 1972). Sea-Land filed motions to dismiss on the grounds of res judicata and failure to state a claim upon which relief could be granted. The Fifth Circuit found:
“... we hold that Mrs. Gaudet retained a compensable cause of action for Mr. Gau-det’s death wholly apart from and not extinguished by the latter’s recovery for his personal injuries ...” (at 1332).
The court further stated:
“[t]he personal injury and wrongful death suits assert two distinct causes of action designed to compensate for two separate losses — the first for the loss and suffering of the injured while he lived, and the second for the losses to his beneficiaries on account of his death ... Quite obviously the jury verdict recovered by Mr. Gaudet during his lifetime did not include damages done to others by his death which had not yet occurred ... the wrongful death action Mrs. Gau-det now attempts to bring never belonged to Mr. Gaudet and in fact did not even accrue until his death.” (at 1332-1334).
Gaudet was filed prior to 1972 and was based upon a claim of unseaworthiness. In 1972 Congress amended 33 U.S.C. § 905(b) to add:
“The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.”
In the instant case, the trial court in its reasons for judgment somewhat erroneously stated:
“In Ludwick Adam Torregano v. Apex Marine Corporation, No. 89-1158, U.S. Supreme Justice O’Connor, as organ of the Court, reaffirmed the holding in Moragne v. States Marine Lines, Inc., 398 U.S. 375 [90 S.Ct. 1772], followed in Miles v. Apex Marine Corp., [498 U.S. 19], 111 S.Ct. 317, wherein the wrongful death action allowed by the Death On High Seas Act (DOHSA) applied to seamen in territorial waters and is inclusive of longshoremen.
Torregan v. Apex, supra, also limited the recovery to loss of income of the seaman, or the support lost by dependents, during the decedent’s lifetime.”
Case Number 89-1158 is entitled Mercedel W. Miles, Individually and as Administratrix of the Succession of Ludwick Adam Torregano, Petitioner v. Apex Marine Corporation et al.; its citation is 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) and West Publishing Company indicates that it should be cited as Miles v. Apex Marine Corp.
In Miles, above, the Court found that there was no recovery for loss of society in a general maritime action based on unseaworthiness for the wrongful death of a Jones Act seaman against his employer.
*1386 As so well stated by the court in Mussa v. Cleveland Tankers, 802 F.Supp. 84 (U.S.D.C., E.D.Mich., 1992):
“Miles was decided in the context of a Jones Act seaman (via his parent) suing his employer under the Jones Act for negligence and under general maritime law for unseaworthiness ... simply put, under the Miles Court’s view, there should be no reason why a Jones Act seaman, unable to sue his employer for nonpecuniary damages directly under a Jones Act negligence claim, could sue his employer for such damages under a related general maritime law claim for unseaworthiness.
Total’s argument that Miles compels a similar result in the present ease goes too far. Such argument seeks to extend Miles’ policy of uniformity to situations, such as the one presented in the cases at bar, where Jones Act seamen are not suing their employer under related Jones Act and general maritime law claims, but instead, are suing a third-party, here Total, under a single general maritime claim of negligence ... A Louisiana district court case, decided after Miles, supports this conclusion. In Rebstock v. Sonat Offshore Drilling, 764 F.Supp. 75 (E.D.La.1991), a Jones Act seaman, and his spouse, asserted negligence claims against a defendant ... third party who was not the plaintiff-seaman’s employer, in relation to the plaintiff-seaman’s injury. The defendant moved to dismiss the loss of consortium claim asserted against it by the plaintiff spouse. The district court denied such motion. In denying the motion, the court noted that Miles did not compel a different result, as in Miles the seaman had sued his employer under the Jones Act and under general maritime law for unseaworthiness and that the Court’s opinion did not concern negligence actions under general maritime law against third parties. Id. at 76. The Court further noted that the facts in the case before it were highly similar to a pre-Miles decision of the Fifth Circuit, Tullos v. Resource Drilling, Inc., 750 F.2d 380, 386 (5th Cir.1985), wherein a spouse of a seaman was allowed to recover loss of consortium damages against a third party under a general maritime law negligence claim. Id. ” (at 86-87).
In Rebstock, above, the court further notes that:
“Under section 5(b) of the Longshore and Harbor Workers’ Act, 33 U.S.C. section 901-950, which permits a longshoreman to sue a nonemployer vessel owner for negligence, the spouse of the longshoreman is permitted to recover loss of consortium damages. See T. Schoenbaum, Admiralty and Maritime Law, section 6-10, at 221.” (at 76).
In Dryden v. Calk, 771 F.Supp. 181 (S.D.Tex.1991) the court noted that:
“ ‘The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen. Gaudet did not consider the preclusive effect of the Jones Act for death of true seamen.’ Miles, 498 U.S. at 31, 111 S.Ct. at 325. Gaudet applies only to longshoremen. The case now before this court involves a seaman.” (at 181).
Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127, 131 (5th Cir.1992) finds that Miles, above, holds “that only survivors of longshoremen killed in territorial waters may recover nonpecuniary damages under Gaudet”.
We note that this court has examined Miles, above, before in Dickey v. Ocean Drilling and Exploration, 598 So.2d 1259 (La.App. 4th Cir.1992), but Dickey does not apply to the instant case, because Dickey was a Jones Act seaman.
In the instant case, the trial court erred in dismissing the nonpecuniary losses because:
1. Mr. Vedros was injured within state territorial waters, i.e. within 3 miles of the Louisiana coastline or within a marine league.
1. Mr. Vedros was a longshoreman, not a seaman;
2. His dependents are suing in general maritime negligence, not in unseaworthiness;
*1387 3. The defendants are third-parties, not his employers.
Thus the instant case fits the very limited factual context to which Gaudet, above, still applies. I note that although the trial court ruled that plaintiffs would not be able to recover for loss of society under their maritime claims, of course, they are able to recover for loss of society and other damages under their products liability, warranty, and other actions.
For the reasons discussed, the judgment of the district court should be reversed and the matter remanded for further proceedings.

. The remainder of the document discusses the homeowners’ action which is moot due to plaintiff s amendment and the exception of prescription was not appealed.